UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


DELIO ROMANES

      Petitioner,

v.                                            Case No. 8:05-cv-7-T-23MAP

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

      Delio Romanes petitions for the writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 (Doc. 6) and challenges the validity of his state convictions for first-degree

murder, kidnapping with a firearm, and robbery with a firearm.[1]  Romanes alleges

multiple claims of trial court error and denial of effective assistance of trial counsel.

Numerous exhibits ("Respondent's Exhibit __") support the response.

      A jury convicted Romanes of all charges.  The state appellate court affirmed

Romanes's convictions and sentences in a per curiam decision without a written

opinion.  Romanes's subsequent challenges to his convictions – a state Rule 3.850

motion and supplement and a state petition for the writ of habeas corpus – were

denied.  Romanes's Section 2254 petition followed.

_____

     [1]  Romanes, codefendants Walter Ruiz, Mickey Hammonds and Lotia Romanes were charged
in a three-count indictment (Respondent's Exhibit 9, Vol. I, pp. 53-5).  Romanes was tried separately.

**STANDARD OF REVIEW**

Because this action commenced after April 24, 1996, Section 2254(d), as

amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210

(11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a

highly deferential standard for federal court review of state court adjudications, states

in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established
> > Federal law, as determined by the Supreme Court of the
> > United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court.
> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied--the state-court adjudication resulted in a decision
> that (1) "was contrary to . . . clearly established Federal Law, as
> determined by the Supreme Court of the United States," or (2) "involved
> an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the
> "contrary to" clause, a federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by this Court

on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

Romanes's convictions and sentences were affirmed on direct appeal in a per curiam decision without a written opinion (Respondent's Exhibit 7), and the denial of his subsequent Rule 3.850 motion for post-conviction relief was likewise affirmed on appeal in another per curiam decision without a written opinion (Respondent's Exhibit 13).  The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Romanes has the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to a finding of fact,

not a mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th

Cir.), cert. denied, 534 U.S. 1046 (2001).  Consequently, a presumption of

correctness attaches to the finding of facts in the trial court's rejection of Romanes's

post-conviction claims of ineffective assistance of counsel (Respondent's Exhibit 17).

**Ground Two**

Romanes alleges that the State knowingly used perjured testimony "coupled

with prosecutorial misconduct" to deny him a fair trial.  The state court rejected this

claim in Romanes's Rule 3.850 motion:

> In ground 10, Defendant alleges that the prosecution knowingly used
> perjured testimony or failed to correct same when it was given.  In
> Kelley v. State, 569 So.2d 754, the Florida Supreme Court held that
> claims of prosecutorial misconduct should be brought on direct appeal
> because the evidence is in the trial record.  No relief is warranted on
> ground 10.

(Respondent's Exhibit 17, Vol. III, p. 289).

A state court's rejection of a petitioner's constitutional claim on a state

procedural ground generally precludes federal habeas review of the claim.  Coleman

v. Thompson, 501 U.S. 722 (1991); Caniff v. Moore, 269 F.3d1245, 1247 (11th Cir.

2001) ("[C]laims that have been held to be procedurally defaulted under state law

cannot be addressed by federal courts.").  "However, a state court's rejection of a

federal constitutional claim on procedural grounds will only preclude federal review if

the state procedural ruling rests upon [an] 'independent and adequate' state ground."

Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  A state court's procedural

ruling constitutes an independent and adequate state rule of decision if (1) the last

state court rendering a judgment in the case clearly and expressly states that it is

-4-

relying upon a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." Judd v. Haley, 250 F.3d at 1313 (citing Card v. Dugger, 911 F.2d 1494 (11th Cir. 1990)). See also Ford v. Georgia, 498 U.S. 411, 424-25 (1991).

The state court expressly applied a state procedural rule and concluded that Romanes should have raised this claim on direct appeal. Consequently, the claim was procedurally barred and not cognizable on collateral attack. Torres-Arboleda v. Dugger, 636 So. 2d 1321,1323 (Fla. 1994). The state appellate court affirmed the application of the procedural bar (Respondent's Exhibit 13). See Harmon v. Barton, 894 F.2d 1268, 1274 (11th Cir. 1990) (state appellate court's per curiam affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state law ground barring federal review). Florida courts consistently apply the procedural rule barring the collateral review of claims that a petitioner could and should have raised on direct appeal. See e.g., Bruno v. State, 807 So.2d 55, 63 (Fla. 2001) (holding that claims of trial court error generally can be raised on direct appeal but not in a Rule 3.850 motion). Accordingly, Romanes's ground two is procedurally defaulted.

This default forecloses federal habeas review absent a showing of either cause and prejudice or a fundamental miscarriage of justice. Harris v. Reed, 489 U.S. 255, 262 (1989); Smith v. Jones, 256 F.3d at 1138. Romanes fails to

-5-

demonstrate cause and prejudice excusing his default.  Romanes neither alleges nor

shows that the fundamental miscarriage of justice exception applies.  Because

Romanes fails to proffer specific facts showing an exception to the procedural default

rule, Hill v. Jones, 81 F.3d 1015 (11th Cir. 1996), ground two is procedurally barred

from federal review.

**Ground Three**

Romanes alleges that the trial court erred by failing to suppress the

out-of-court identification[2] of Romanes by witness Abraham Machado.[3]  The state

appellate court rejected this claim on direct appeal (Respondent's Exhibit 7).

A defendant possesses a due process right to exclude identification testimony

resulting from an unnecessarily suggestive identification procedure conducive to

irreparable mistaken identification.  Stovall v. Dugger, 388 U.S. 293, 301-02 (1967).

"[A] pretrial identification by photograph will be set aside . . . only if the photographic

identification procedure was so impermissibly suggestive as to give rise to a very

substantial likelihood of irreparable misidentification."  Simmons v. United States, 390

U.S. 377, 384 (1968).  "[R]eliability is the linchpin in determining the admissibility of

identification testimony . . . ."  Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

---

[2]  To the extent that Romanes challenges in his memorandum of law (Doc. 4) "both the out of court and in court identification" by Machado, his claim is exhausted as to the out-of-court identification only.  Romanes challenged only the out-of-court identification on direct appeal.

[3]  Machado identified Romanes from a single photograph presented to him by a detective of the Tampa Police Department during an interview at the State Attorney's Office.  (Respondent's Exhibit 9, Vol. X, pp. 1011-23).

In assessing the constitutionality of a trial court's decision to permit the use of an out-of-court identification, a court must determine whether the identification procedure was unduly suggestive and, if so, whether the identification was nonetheless reliable under the totality of the circumstances.  <u>Cikora v. Dugger</u>, 840 F.2d 893, 895 (11th Cir. 1988).  "Factors to be considered in determining whether the identification was reliable include: (1) opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification."  <u>United States v. Diaz</u>, 248 F.3d 1062, 1102 (11th Cir. 2001) (<u>citing</u> <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972)).

During a break in the trial, the court heard argument on Romanes's suppression motion.  In response to Romanes's counsel's questions, Machado testified:

| | |
|---|---|
| Counsel: | When asked during your deposition last week to describe Mr. Romanes, is it accurate to say you described him as being short and bald? |
| Machado: | Yes. |
| Counsel: | You could provide no other details of his appearance? |
| Machado: | Not much because I didn't pay attention. |
| Counsel: | When you were interviewed by the - - strike that.  Were you interviewed by an investigator from the state attorney's office on January 22 or January 23 of this year? |
| Machado: | Yes. |
| Counsel: | How much [sic] photos of the man Delio Romanes were you shown? |

Machado:    One.

Counsel:    And there was only one photo of a bald
            person?

Machado:    Yes, I believe so.

(Respondent's Exhibit 9, Vol. X, pp. 1012-13).

Upon questioning by the prosecutor, Machado testified that he met with Romanes and codefendant Walter Ruiz to go to a pawn shop and purchase a gun. This was Machado's first time meeting Romanes.  Ruiz and Romanes met Machado at Machado's residence and stood outside talking for several minutes.  Romanes and Machado were within a few feet of each other during the conversation.  Machado rode with Romanes and Ruiz to a pawn shop.  Machado, Romanes and Ruiz spent 10-15 minutes in the pawn shop.  Machado stood next to Romanes and Ruiz while they looked at guns.  Machado, Romanes and Ruiz rode together back to Machado's residence.  Machado agreed to meet with them after the three-day statutory waiting period to return to the pawn shop to pick up the gun.  Romanes and Ruiz later returned to Machado's residence as agreed and the three returned to the pawn shop and picked up the gun.  (Respondent's Exhibit 9, Vol. X, pp. 1011-17).

When asked about the photo identification, Machado testified:

Court:      . . . When the investigator showed you the
            picture did you recognize the person?

Machado:    True.

Court:      Did [the investigator] tell you why he was
            showing you the picture?

Machado:    True.

| Court: | Did he tell you that he was going to be showing you pictures of people involved in a murder in Tampa? |
|---|---|
| Machado: | Yes. |
| Court: | And you had no trouble recognizing Mr. Romanes? |
| Machado: | No.  One thing I saw him and it wasn't that I just saw him I had to think a little bit.  And to think if it was him or not, see. |

(Respondent's Exhibit 9, Vol. X, pp. 1019-20).  After further questioning, defense counsel moved to strike the photograph of Romanes presented to Machado for the out-of-court identification.  The trial court denied the motion to suppress and the motion to strike.  (Respondent's Exhibit 9, Vol. X, pp. 1021-23).  Machado testified to the jury as a prosecution witness.

Even assuming, arguendo, that the identification procedure utilized with Machado was unduly suggestive and unreliable given the totality of the circumstances, see Cikora v. Dugger, 840 F.2d at 895, any error in denying Romanes's suppression motion was harmless.

Under the harmless error standard articulated in Brecht v. Abrahamson, 507 U.S. 619 (1993), habeas relief is granted only if the error "had a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. at 623 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Even without Machado's identification, other evidence adduced at trial showed Machado accompanied Romanes to the pawn shop to purchase the gun. Codefendant Mickey Hammonds testified that he drove Romanes and Ruiz to

Machado's house and that Machado accompanied the three of them to the pawn

shop to purchase the gun.  (Respondent's Exhibit 9, Vol.  IX, pp. 882-3).  Romanes

fails to show that any error in admitting Machado's identification of Romanes had a

substantial and injurious effect on the jury's verdict.  <u>Brecht v. Abrahamson</u>, 507 U.S.

at 623.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Romanes claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between."  <u>Waters v. Thomas</u>, 46

F.3d 1506, 1511 (11th Cir. 1995) (<u>en</u> <u>banc</u>) (<u>quoting</u> <u>Rogers v. Zant</u>, 13 F.3d 384, 386

(11th Cir. 1994)).  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), governs an

ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well
> settled and well documented.  In <u>Strickland v. Washington</u>, 466 U.S.
> 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set
> forth a two-part test for analyzing ineffective assistance of counsel
> claims.  According to <u>Strickland</u>, first, the defendant must show that
> counsel's performance was deficient.  This requires showing that
> counsel made errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so serious
> as to deprive the defendant of a fair trial, a trial whose result is reliable.
> <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. 2052.

<u>Sims v. Singletary</u>, 155 F.3d 1297, 1305 (11th Cir. 1998).

<u>Strickland</u> requires proof of both deficient performance and consequent

prejudice.  <u>Strickland v. Washington</u>, 466 U.S. at 697 ("There is no reason for a court

deciding an ineffective assistance claim . . . to address both components of the

-10-

inquiry if the defendant makes an insufficient showing on one.");  Sims v. Singletary,
155 F.3d at 1305 ("When applying Strickland, we are free to dispose of
ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed
to have rendered adequate assistance and made all significant decisions in the
exercise of reasonable professional judgment."  Strickland v. Washington, 466 U.S. at
690.  "[A] court deciding an actual ineffectiveness claim must judge the
reasonableness of counsel's challenged conduct on the facts of the particular case,
viewed as of the time of counsel's conduct."  Strickland v. Washington, 466 U.S. at
690.  Strickland requires that "in light of all the circumstances, the identified acts or
omissions were outside the wide range of professionally competent assistance."
Strickland v. Washington, 466 U.S. at 690.

      Because "[a]n error by counsel, even if professionally unreasonable, does not
warrant setting aside the judgment of a criminal proceeding if the error had no effect
on the judgment," Romanes must demonstrate that counsel's error prejudiced the
defense.  Strickland v. Washington, 466 U.S. at 691-92.  To meet this burden,
Romanes must show "a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.  A reasonable
probability is a probability sufficient to undermine confidence in the outcome."
Strickland v.  Washington, 466 U.S. at 694.

      Strickland cautions that "strategic choices made after thorough investigation of
law and facts relevant to plausible options are virtually unchallengeable; and strategic
choices made after less than complete investigation are reasonable precisely to the
extent that reasonable professional judgments support the limitations on

-11-

investigation." <u>Strickland v. Washington</u>, 466 U.S. at 690-91.  Romanes cannot meet

his burden merely by showing that the avenue chosen by counsel proved

unsuccessful:

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.  We ask
> only whether some reasonable lawyer at the trial could have acted, in
> the circumstances, as defense counsel acted at trial. . . .  We are not
> interested in grading lawyers' performances; we are interested in
> whether the adversarial process at trial, in fact, worked adequately.

<u>White v. Singletary</u>, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  <u>Accord</u> <u>Chandler v.</u>

<u>United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial

lawyers, in every case, could have done something more or something different.  So,

omissions are inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or

appropriate, but only what is constitutionally compelled.' ") (<u>en</u> <u>banc</u>) (<u>quoting</u> <u>Burger</u>

<u>v. Kemp</u>, 483 U.S. 776, 794 (1987)).  <u>See</u> <u>also</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751

(1983) (counsel has no duty to raise frivolous claims).

**Ground One**

Romanes alleges that his trial counsel rendered ineffective assistance by

mishandling Romanes's demand for speedy trial.  Romanes faults trial counsel for

filing a demand for speedy trial instead of a notice of expiration of the speedy trial

period under Florida law.[4]  Romanes further alleges that this error prejudiced him

---

[4] Florida's speedy trial rule provides that a trial shall commence within 175 days of arrest when a defendant is charged with a felony.  Fla. R. Crim. P. 3.191(a).  The speedy trial period commences when a person is taken into custody.  After expiration of the prescribed time, a defendant may file a "notice of expiration of speedy trial time" and within five days of filing the notice, the state court shall hold a hearing on the notice.  With some exceptions inapplicable in Romanes's case, trial must thereafter commence within ten days or the defendant is "forever discharged from the crime."  Fla. R.

(continued...)

because the delay between the expiration of the speedy trial period and the

commencement of trial allowed the prosecutor time to negotiate a plea agreement

with codefendant Mickey Hammonds.  Hammonds provided "critical" testimony

against Romanes at trial.

> The state court rejected this claim after an evidentiary hearing:
>
> In ground 3 [of his Rule 3.850 motion], Defendant alleged ineffective assistance of counsel for mishandling Defendant's right to a speedy trial and discharge.  In ground 4b [of his Rule 3.850 motion], Defendant alleged ineffective assistance of counsel by filing a demand for speedy trial instead of a notice of expiration of speedy trial after Defendant had been arrested, confined, and continuously available for trial for more than 175 days.
>
> Pursuant to Florida Rule of Criminal Procedure 3.191, the State had essentially fifteen (15) days from the date of the filing of the motion for expiration of speedy trial to actually bring Defendant to trial. [Defense counsel] testified that with the knowledge that [Romanes's] co-defendant Mr. Hammond [sic] was going to be a state witness or that the state was seeking the death penalty, he would not have wanted to have file [sic] the notice for expiration of speedy trial, if he had not been ready to proceed to trial within that time frame.  Therefore, regardless of whether counsel failed to file the proper motion, the fact remained that he still needed to ask for a continuance.  [Defense counsel] further testified that after discussing this with Defendant, he agreed with counsel's decision.  Defendant fails to meet the second prong of the Strickland test and as such, no relief is warranted on this ground.

(Respondent's Exhibit 17, Vol. III, p. 280) (court's record citations omitted).  To obtain

relief on Ground One, Romanes must establish that the state court unreasonably

applied Strickland or unreasonably determined the facts in denying his Rule 3.850

motion.

---

(...continued)
Crim. P. 3.191(p)(3).

Romanes was arrested on April 12, 1995 (Respondent's Exhibit 17, Vol. III at 470). Trial was initially set for October 16, 1995 (Respondent's Exhibit 17, Vol. II, p. 243). On September 29, 1995, the prosecutor announced her intention to seek the death penalty against Romanes. Upon Romanes's motion, penalty phase counsel was appointed on October 10, 1995[5] (Respondent's Exhibit 9, Vol. I, p. 74). The trial was continued and ultimately commenced in February 1996.

Defense counsel testified at the evidentiary hearing on Romanes's Rule 3.850 motion that he purposely avoided demanding a speedy trial and forcing the prosecutor to try Romanes in October 1995 because of the late notice of her intention to seek the death penalty and the lack of time to adequately prepare the case (Respondent's Exhibit 17, Vol. III, pp. 418, 426, 433, 437). Defense counsel further testified that after discussing with Romanes the speedy trial issue and the possibility of a death sentence, Romanes agreed to waive his speedy trial right (Respondent's Exhibit 17, Vol. III, pp. 418, 437-38, 463). To the contrary, Romanes testified to giving counsel no permission to waive speedy trial (Respondent's Exhibit 17, Vol. III, p. 467).

In denying relief on this ineffective assistance claim, the state post-conviction court found counsel's testimony more credible than Romanes's testimony. The state trial court's factual determinations are presumed correct. Relying only upon his

---

[5] The record shows that during trial court proceedings on October 11, 2005, instead of waiving his speedy trial right, Romanes attempted to reserve his right to demand a speedy trial. (Respondent's Exhibit 17, Vol. II, p. 240). Defense counsel had not filed a demand for speedy trial or a notice of expiration of the speedy trial period, which expired in early October 1995.

unsupported contention, Romanes fails to overcome the presumption of correctness

by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Romanes fails to meet

his burden of proving that the state court's rejecting this claim is an unreasonable

application of <u>Strickland</u> or an unreasonable determination of the facts.  28 U.S.C.

§ 2254(d).[6]

**Grounds Four and Five**

In ground four Romanes alleges that the trial court erred by retroactively

applying a principal jury instruction amended after the date of the charged offenses.

Romanes claims this error violates both federal due process and <u>ex</u> <u>post</u> <u>facto</u>

principles.  In ground five, Romanes alleges that his trial counsel rendered ineffective

assistance by failing to object to this instruction.

The state court rejected these claims after an evidentiary hearing:

Grounds 1, 2 and 4a of Defendant's Motion can be addressed
simultaneously.  In ground 1, Defendant alleged that the trial court
verbally and in writing retroactively applied an improper jury instruction.

---

[6]   In his memorandum of law, Romanes attempts to assert constitutional violations of his
speedy trial and due process rights.  Romanes presented only a state statutory speedy trial claim in his
Rule 3.850 motion.  The additional constitutional claims are unexhausted.  28 U.S.C. § 2254(b)(1)(A),
(c); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999) (a state prisoner must give the state courts an
opportunity to act on his claims before he presents those claims to a federal court in a habeas petition).
<u>See</u> <u>also</u> <u>Henderson v. Campbell</u>, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal
habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised
the issue in the state courts.") (citations omitted).  A federal court cannot grant a Section 2254 petition
unless the petitioner has exhausted every available state court remedy.  <u>Snowden v. Singletary</u>, 135
F.3d 732, 735 (11th Cir. 1998).  The state's rule precluding a successive Rule 3.850 motion bars
Romanes's returning to state court to present a second Rule 3.850 motion.  <u>See</u> Fla. R. Crim. P.
3.850(b).  Romanes fails to demonstrate cause and prejudice excusing his default.  <u>Edwards v.</u>
<u>Carpenter</u>, 529 U.S. 446, 451 (2000); <u>Murray v. Carrier</u>, 477 U.S. at 495-96. Romanes has neither
alleged nor shown that the fundamental miscarriage of justice exception applies.  <u>Henderson v.</u>
<u>Campbell</u>, 353 F.3d at 892.  Because Romanes fails to proffer specific facts showing an exception to
procedural default, <u>Hill v. Jones</u>, 81 F.3d at 1015, his constitutional speedy trial and due process claims
are procedurally barred from federal review.

In ground 2, Defendant alleged ineffective assistance of counsel for failing to object to the improper jury instruction being given.  In ground 4a, Defendant alleged ineffective assistance of counsel for failing to research, acquaint and be familiar with the fact that the Florida Supreme Court had modified the jury instruction on principals under 3.01 on December 7, 1995.  At the time Defendant committed the present offense, the Florida Standard Jury Instruction on principals stated as follows:

> If two or more persons help each other [commit] [attempt to commit] a crime and the defendant is one of them, the defendant is a principal and must be treated as if [he] [she] had done all of the things the other person or persons did if the defendant:
>
> > 1.  Knew what was going to happen.
> > 2.  Intended to participate actively or by sharing in an expected benefit and
> > 3.  Actually did something by which [he] [she] intended to help [commit] [attempt] commit] the crime.

See Standard Jury Instructions in Criminal Cases, 665 So.2d 212, 214 (Fla. 1995).

Thereafter, the instruction was amended and now states the following:

> If the defendant helped another person or persons [commit] [attempt to commit] a crime, the defendant is a principal and must be treated as if [he] [she] had done all the things the other person or persons did if
>
> > 1.  The defendant had a conscious intent that the criminal action be done and
> > 2.  The defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually [commit] [attempt to commit] the crime.

Id. at 214.

In the instant case, the Court instructed the jury using the amended jury instruction, thereby informing the jury that Defendant could be convicted

of First Degree Murder if he had "a conscious intent that the criminal act be done."

The allegations in grounds 1, 2 and 4a center around the retroactive application of the principal instruction and counsel's failure to object on ex post facto grounds. At the evidentiary hearing, [defense counsel] testified that he did not make any argument about the new instruction being an ex post facto law because it was a procedural change as opposed to a substantive one. "Utilizing [an] amended standard jury instruction on law of principals, defining principal as one who had conscious intent that criminal act be done, rather than [the] original instruction, defining principal as one who knew what was going to happen, did not constitute a[n] ex post facto violation where [the] amended instruction did not substantively change the law." See Larman v. State, 724 So.2d 1230 (Fla. 5th DCA 1999). Defendant fails to meet the second prong of the Strickland test and, as such, no relief is warranted on these grounds.

(Respondent's Exhibit 17, Vol. III, pp. 279-80).

The Ex Post Facto Clause prohibits retroactive application of penal legislation. Landgraf v. USI Film Products, 511 U.S. 244, 266 (1994). "[T]he focus of the ex post facto inquiry is not whether a legislative change produces some ambiguous sort of 'disadvantage' [to defendants] . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." California Dep't of Corrs. v. Morales, 514 U.S. 499, 506 n. 3 (1995).

The trial court instructed the jury using the amended principal instruction. (Respondent's Exhibit 9, Vol. IX, pp. 1222-23).[7] The Supreme Court considered whether jury instructions violated the Ex Post Facto Clause in Splawn v. California, 431 U.S. 595, 599 (1977), in which the defendant argued that portions of the jury

_____

[7] Romanes offered no objection to the trial court using this instruction (Respondent's Exhibit 17, Vol. XI, pp. 1212, 1239).

instructions "were given pursuant to a statute enacted after the conduct for which he was prosecuted."  The Supreme Court observed that the newly-enacted statute failed to "create any new substantive offense, but merely declare[d] what type of evidence may be received and considered . . . ."  <u>Splawn v. California</u>, 431 U.S. at 600.  The defendant's challenge was limited to whether a change in the procedural rules equaled the enactment of an <u>ex</u> <u>post</u> <u>facto</u> law.  The Supreme Court, relying upon a decision of the California Court of Appeals, found "it unnecessary to determine whether if [the statute] had permitted the introduction of evidence which would have been previously excluded under California law, petitioner would have had a tenable claim under the <u>Ex</u> <u>Post</u> <u>Facto</u> <u>Clause</u> of the United States Constitution."  <u>Splawn v. California</u>, 431 U.S. at 601.

In the absence of a Supreme Court decision determining that a jury instruction violated the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause, the state court's rejection of Romanes's <u>ex</u> <u>post</u> <u>facto</u> claim is neither contrary to nor an unreasonable application of controlling Supreme Court precedent.  <u>See</u> 28 U.S.C. § 2254(d)(1).  <u>See</u> <u>also</u> <u>Ortiz v. Quarterman</u>, 504 F.3d 492, 498 (5th Cir. 2007) ("In the absence of a Supreme Court decision determining whether jury instructions violated the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause, we cannot hold that the T[exas] C[ourt of] C[riminal] A[ppeals] rejection of Ortiz's <u>ex</u> <u>post</u> <u>facto</u> claim was contrary to or an unreasonable application of clearly established Supreme Court precedent.").

Alternatively, the claim warrants no relief.  To succeed on an <u>ex</u> <u>post</u> <u>facto</u> challenge, Romanes must prove that the law, retroactively applied to him, caused him some disadvantage.  <u>Ortiz v. Quarterman</u>, 504 F.3d at 499 (<u>citing</u> <u>Weaver v. Graham</u>,

450 U.S. 24, 29 (1981) ("[F]or a criminal or penal law to be ex post facto [,] it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.").  The 1995 amended principal instruction "is merely a refinement of the original instruction which more accurately defines the elements of principal liability.  There has been no substantive change in the law of principals."  Larman v. State, 724 So.2d 1230, 1232 (Fla. 5th DCA 1999).  The instruction neither changed the definition of the crimes for which Romanes was on trial nor increased the possible sentences.  Consequently, Romanes fails to establish an ex post facto violation.

Romanes's claim that the jury instruction violated his due process right likewise lacks merit.  An error in instructing the jury cannot constitute a basis for federal habeas relief unless the error "so infected the entire trial that the resulting conviction violates due process."  Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  See also Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997), cert. denied, 523 U.S. 1023 (1998) ("A defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair.").  Romanes fails to demonstrate that the state trial court's instructions, viewed in light of the entire trial record, so infected the trial that his first-degree murder, kidnapping, and robbery convictions violate federal due process standards.  Consequently, this due process claim warrants no federal habeas relief.

Romanes's ineffective assistance claim based on counsel's failure to object to the principal instruction warrants no relief.  Romanes fails to demonstrate that if counsel had objected to the instruction, the jury would have acquitted him.  Romanes

fails to demonstrate prejudice as a result of counsel's alleged error.  In the absence of prejudice, a claim of ineffective assistance of counsel cannot succeed because the requirements of <u>Strickland</u> remain unsatisfied.  Romanes is not entitled to federal habeas relief on this claim.

**Supplemental Ground Six**

Romanes filed a Supplemental Habeas Issue (Doc. 20) and memorandum of law (Doc. 21) adding a claim of ineffective assistance of appellate counsel. Respondent contends that this additional claim is time-barred under the AEDPA.

Romanes's convictions were final on August 13, 1998, when the 90-day period for filing a petition for writ of <u>certiorari</u> in the United States Supreme Court expired. <u>See</u> <u>Bond v. Moore</u>, 309 F.3d 770, 772 (11th Cir. 2002); Sup. Ct. R. 13.3.[8]  The limitation period for filing a federal habeas corpus petition started running the following day on August 14, 1998.  A total of 142 days of the one-year AEDPA limitation period passed between August 14, 1998, and the constructive filing[9] of Romanes's original Rule 3.850 motion on January 3, 1999.  Romanes's Rule 3.850 motion and its amendments remained pending until the mandate issued on August 16, 2004 (Respondent's Exhibit 15).  Romanes had 223 days (until March 27, 2005)

─────────────────────

[8] "The time to file a petition for a writ of <u>certiorari</u> runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)."  Sup. Ct. R. 13.3.

[9] Respondent cites January 3, 1999, as the date that Romanes constructively filed (i.e., signed and dated) his Rule 3.850 motion.  The online docket for the Thirteenth Judicial Circuit, Hillsborough County, Florida, shows that the Rule 3.850 motion was docketed on January 6, 1999.  The court uses the date of constructive filing to calculate the tolling effect of this motion on the AEDPA limitation period.  <u>See</u> 28 U.S.C. § 2254(d)(2).

remaining in the AEDPA limitation period in which to timely file a federal habeas petition.

Romanes timely filed[10] his original federal habeas petition (Doc. 1) on December 28, 2004.[11]  Romanes presented his supplemental ineffective assistance of appellate counsel claim in neither his original nor his amended[12] federal habeas petition.  On February 8, 2005, Romanes signed[13] his state habeas petition alleging the ineffective assistance of appellate counsel, the claim presented as supplemental ground six of his amended federal habeas petition.  The state court denied relief.[14] Respondent contends that Romanes's state habeas petition failed to qualify as a statutory tolling application under 28 U.S.C. § 2254(d) because the petition was untimely under state procedural rules.

---

[10]  In calculating the limitations period under the AEDPA, the court gives Romanes the benefit of the "mailbox rule" and considers his Section 2254 petition as "filed"on the date Romanes signed and delivered  the petition to prison authorities for mailing.  See Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999).

[11]  Respondent concedes the timeliness of both Romanes's original and amended federal habeas petitions.

[12]  The court directed (Doc. 3) Romanes to file an amended federal habeas petition on the proper standardized petition form.

[13]  The online docket of the Florida Second District Court of Appeal shows that Romanes's petition was docketed on February 15, 2005.

[14]  A copy of the order denying relief is not included in the record.  The online docket for the Florida Second District Court of Appeal shows that court denied both Romanes's state habeas petition and a motion for rehearing on April 18, 2005.

Rule 9.140(j)(3)(B), Florida Rules of Appellate Procedure, requires that a petition alleging ineffective assistance of appellate counsel "shall not be filed more than two years after the conviction becomes final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel." Amendments to the Fla. Rules of App. P., 696 So.2d 1103, 1107 (Fla. 1996). Romanes's convictions became final in 1998 when the mandate issued affirming his convictions on direct appeal. His two-year limitation period for filing his state habeas petition alleging ineffective assistance of appellate counsel expired in 2000. On February 8, 2005, Romanes signed his state habeas petition asserting his ineffective assistance of appellate counsel claim. The petition was untimely. Fla. R. App. P. 9.140(j)(3)(B).

This court cannot presume that the state court ignored its own procedural rules in summarily denying Romanes's state habeas petition.[15] See Coleman v. Thompson, 501 U.S. 722, 735-36 (1991); Kight v. Singletary, 50 F.3d 1539, 1544-45 (11th Cir. 1995); Tower v. Phillips, 7 F.3d 206, 209 (11th Cir. 1993). The untimely state habeas petition was not "properly filed" under state procedural rules and failed to toll the AEDPA limitation period. See Pace v. DiGuglielmo, 544 U.S. 408 (2005) (an untimely filed state post-conviction motion is not "properly filed" within the meaning of 28 U.S.C. § 2254(d)(2)). Neither Romanes's state habeas petition nor his

---

[15] Although the record includes no copy of the order denying the state habeas petition, the respondent asserts that the denial was both "silent" and "unelaborated." Respondent further asserts that Romanes recognized the petition was untimely, arguing in his motion for reconsideration that his collateral counsel had not advised him of the two-year time limit. Romanes disputes neither contention in his reply to the respondent's response.

federal habeas petition tolled the AEDPA limitations period.  See Duncan v. Walker, 533 U.S. 167, 172 (2001) ("[A] properly filed federal habeas petition does not toll the [AEDPA] limitation period.").  Consequently, Romanes's supplemental petition signed on April 25, 2005,[16] is untimely.  Romanes cannot present his claim of ineffective assistance of appellate counsel unless he demonstrates that the claim relates back to his claims of trial court error and ineffective assistance of trial counsel raised in his timely-filed original and amended federal petitions.

Federal Rule of Civil Procedure 15(c) governs a federal habeas petitioner's motion to amend.  Rule 15(c)(1) provides, in pertinent part, that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Relation back depends upon the existence of a common "core of operative facts" uniting the original and newly asserted claim.  Mayle v. Felix, 545 U.S. 644, 662-63 (2005).  "The untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings."  Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000).  "[T]he untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'"  Davenport v. United States, 217 F.3d at 1344 (citations omitted).

––––––––––––––––––––

[16]  The court docketed Romanes's supplemental habeas claim (Doc. 20) and memorandum of law (Doc. 21) on April 29, 2005.

Romanes's supplemental claim of ineffective assistance of appellate counsel is distinctly separate from his claims of trial court error and ineffective assistance of trial counsel raised in his original and amended petitions.  Romanes presented no claims of ineffective assistance of appellate counsel in his original or amended petition.  The only fact that the claims have in common are that they are based upon the principal jury instruction.  Trial counsel's conduct during the trial and appellate counsel's conduct on appeal are distinct in both time and type.  See Davenport v. United States, 217 F.3d at 1344.  Romanes's supplemental ground six fails to relate back and is time-barred.

Accordingly, Romanes's amended petition for the writ of habeas corpus (Doc. 6) is **DENIED**.  The clerk shall enter a judgment against Romanes and close this action.

ORDERED in Tampa, Florida, on November 14, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE